UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRANCES SMILEY,

    *Plaintiff*,

v.

COMMISSIONER OF
SOCIAL SECURITY,

    *Defendant*.
_____/

CASE NO. 10-CV-10473

DISTRICT JUDGE SEAN F. COX
MAGISTRATE JUDGE CHARLES E. BINDER

# MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the relevant evidence of record in this case, I suggest that substantial evidence supports the Commissioner's determination. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to the undersigned magistrate judge for the purpose of reviewing

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 14.)

Plaintiff was 58 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 44,101.) Plaintiff's relevant employment includes janitorial work and work as a shirt presser. (Tr. at 11, 32, 130.) Plaintiff filed the instant claims on May 30, 2006, alleging that she became unable to work on September 1, 2005. (Tr. at 101.) The claim was denied at the initial administrative stages. (Tr. at 40.) In denying Plaintiff's claims, the Defendant Commissioner considered bilateral carpal tunnel syndrome and disorders of the back, discogenic and degenerative, as possible bases of disability. (*Id.*) On July 9, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Ethel Revels, who considered the application for benefits *de novo*. (Tr. at 41-51.) In a decision dated August 28, 2009, the ALJ found that Plaintiff was not disabled. (Tr. at 51.) Plaintiff requested a review of this decision on September 8, 2009. (Tr. at 5.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on January 10, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On February 3, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is

multifaceted, in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *Accord Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *Accord Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility" (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."))). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability").

"However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence

without directly addressing in his written decision every piece of evidence submitted by a party."); *accord Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

C.  **Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "[Benefits] are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis; however, since neither the ALJ nor the Appeals Council reached any issues beyond Step One, the analysis is limited to the question whether Plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534.

D.  **ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of September 1, 2005, through her date last insured of September 30, 2005.[2] (Tr. at 46.)

---

[2]In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(i), 423(d)(1)(A). Federal courts have therefore held that "[m]edical evidence is relevant to prove a disability only while the claimant enjoyed insured status. However, medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Social Security,* 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975)); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979); and *Begley v. Matthews*, 544 F.2d 1345, 1354 (6th Cir. 1976). Neither party

5

At step two, the ALJ found that Plaintiff had the severe impairments of carpal tunnel syndrome, hypertension, arthritis, and obesity within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found that Plaintiff's combination of impairments did not meet or equal one of the listings in the regulations. (Tr. at 47.) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform her past relevant work. (Tr. at 50.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of light work. (Tr. at 47-50.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 51.)

### E. Administrative Record

A review of the record evidence indicates that Plaintiff was treated by Mamie Wong-Lim, M.D., for her hypertension, osteoarthritis, bilateral carpal tunnel syndrome, back pain, and partial tear of the right supraspinatus tendon of the shoulder from January 2003 (after a syncopal episode) through 2005. (Tr. at 219-44, 253-68.)

Plaintiff began participating in physical therapy in March 2003 for bilateral knee osteoarthritis and lumbar dysfunction, but was discharged in September 2003 for her failure to attend 3 out of 6 appointments. (Tr. at 210-17.) The discharge summary reported that Plaintiff "demonstrates improvement." (Tr. at 216.)

Plaintiff underwent a colonoscopy and polypectomy in February 2004. (Tr. at 249.) In April 2004, Plaintiff fell down and injured her right arm and shoulder. (Tr. at 251.) An x-ray taken at the time revealed that no fracture had occurred. (Tr. at 252.)

In September 2004, it was noted that Plaintiff should undergo surgery for her carpal tunnel syndrome, that her shoulder "sometimes gives her pain from time to time," but that her back was "doing fairly well." (Tr. at 257.) In March 2005, Plaintiff was seen at Henry Ford Health Systems

takes issue with this conclusion.
6

for follow-up on reports of left hand numbness and weakness. The examining physician reported a clinical impression of "elbow tendinitis with resolution after steroid injection." (Tr. at 222.)

A Physical Residual Functional Capacity ("RFC") Assessment completed on September 30, 2005, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk (with normal breaks) for about 6 hours in an 8-hour workday, sit (with normal breaks) for about 6 hours in an 8-hour day and could push or pull without limitation. (Tr. at 312.) The assessment also found that Plaintiff was occasionally limited in the postural area and that she should never be required to climb ladders. (Tr. at 313.) There were no manipulative, visual or communicative limitations established. (Tr. at 314-15.) The only noted environmental limitation was that Plaintiff should avoid concentrated exposure to vibration. (Tr. at 315.)

In the Adult Function Report completed in July 2006, Plaintiff reported that she lived with her husband, was able to shower, cook, take her medications, take small walks, visit her grandchildren, wash dishes, clean the house, watch television, and watch movies on a daily basis. (Tr. at 136.) Plaintiff also reported that it is difficult for her to put clothes over her head or put her arms in a jacket. (Tr. at 137-38.) Plaintiff stated that she was able to drive, use public transportation, and shop in stores, but that her daughter would often take her shopping and help her carry the grocery bags. (Tr. at 138-39.) Plaintiff reported that she was able to manage her financial affairs without assistance, and was able to go to church, on picnics, to the zoo, the movies, or to visit others, and was also able to "go to the park, play volleyball, [and] walk." (Tr. at 140.) Plaintiff indicated that she could walk for about three blocks and then rest for about 20 minutes, and that she could pay attention for a very long time if interested, and that she could follow written and spoken instructions well. (Tr. at 141.) Plaintiff stated that she got along well with authority figures but found changes in routine difficult. (Tr. at 142.)

Plaintiff testified at the administrative hearing that her condition became more severe when she fell in 2003. (Tr. at 23.) Plaintiff was experiencing blood clots and carpal tunnel syndrome from that time through 2005, the date she was last insured. (Tr. at 24-25.)

The ALJ asked the vocational expert ("VE") to consider a person of Plaintiff's background who:

> needs simple, repetitive type tasks because there are moderate limitations in the ability to maintain concentration for extended periods due to pain. That work must not involve climbing of stairs, no squatting, kneeling, stooping, crouching or crawling with only occasional use of the hands, and no over shoulder reaching.

(Tr. at 33.) The VE responded that such a person could perform the sedentary job of surveillance monitor and that there are approximately 950 jobs in the Michigan economy and 36,000 nationally. (Tr. at 33, 35.) The VE further testified that the result would not be changed if a sit/stand at will option were added to the assumptions. (Tr. at 34.) The VE added that at the light exertional level, the additional jobs of receptionist and information clerk would be available in significant numbers in the Michigan and national economies. (Tr. at 34-35.)

**F.   Analysis and Conclusions**

**1.   Legal Standards**

The ALJ determined that during the time she qualified for benefits, Plaintiff possessed the residual functional capacity to perform light work. (Tr. at 47-50.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

8

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2. Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically argues that her impairments meet or equal Listing 1.02, that her disabilities were present before her insured status expired, and that the residual functional capacity described in the hypothetical is not supported by the record as a whole. (Doc. 11.)

A plaintiff's impairment must match all the specified medical criteria in order to show the impairment meets a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990); 20 C.F.R. § 404.1525(c); *Golay v. Comm'r of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003). Plaintiff cannot rely on the "overall functional impact of [her] unlisted impairment or combination of impairments" to satisfy equivalence to a Listing. *Zebley*, 493 U.S. at 531.

Listing 1.02A and B, 20 C.F.R. Part 404, Subpart P, Appendix 1, concerns major dysfunctions of joints. *Adams v. Massanari*, 55 Fed. App'x 279, 284 (6th Cir. 2003). Listing 1.02 requires that major dysfunction of joints be:

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s) with: (A) Involvement of one major peripheral weight-bearing joint (i.e., hip, knee or ankle), resulting in inability to ambulate effectively . . . or (B) Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.02A and B. "Limited ability to walk falls well short of equaling the stringent requirements of Listing 1.02 . . . ." *Burnside v. Comm'r of Social Security*, No. 1:08-cv-928, 2010 WL 3609380, at *9 (W.D. Mich. Mar. 4, 2010). Instead, the regulations define an inability to ambulate effectively as "an extreme limitation of the ability to walk . . . having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities . . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 100B2b.

The evidence in the instant case is that Plaintiff did not use any assistive device to ambulate, and the RFC Assessment concluded that Plaintiff could stand or walk (with normal breaks) for about 6 hours in an 8-hour workday. (Tr. at 312.) Plaintiff's own report indicated that she is able to take small walks, and "go to the park, play volleyball, [and] walk." (Tr. at 136, 140.) I therefore suggest that substantial evidence supports the finding that Plaintiff does not meet Listing 1.02. *Brown v. Astrue*, No. 08-11346, 2009 WL 2993810, at *4 (E.D. Mich. Sept. 16, 2009) (Listing 1.02 not met where RFC assessment concluded that the plaintiff could stand or walk for 6 hours in an 8-hour workday, doctor's notation stated that the plaintiff walked slowly with impaired weight bearing and altered her gait to avoid pain, but where the plaintiff did not use a cane for walking).

Although not specifically argued by Plaintiff, the ALJ's findings were that Plaintiff's subjective complaints of pain were not fully credible. Plaintiffs are required to establish that the objectively-determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

Although Plaintiff has shown the existence of medical impairments, they were not of such severity to give rise to disabling pain. Plaintiff's condition improved with physical therapy. (Tr. at 216.) Although Plaintiff injured her right arm and shoulder, an x-ray revealed that no fracture had occurred. (Tr. at 252.) Plaintiff's carpal tunnel syndrome could have been resolved with surgery as recommended by her doctor, her shoulder gave her only occasional discomfort, and her back had improved. (Tr. at 257.) In addition, Plaintiff's elbow tendinitis showed "resolution" after she was given a steroid injection. (Tr. at 222.) The physical RFC indicated that Plaintiff could still perform substantial gainful activity (Tr. at 312-15), and Plaintiff's own report of her daily activities revealed that she was able to independently function, shower, cook, take small walks, visit her grandchildren, wash dishes, clean the house, watch television, watch movies, drive, use public transportation, shop in stores, go to church, go on picnics, to the zoo, to the movies, to visit others,

and "go to the park, play volleyball, [and] walk." (Tr. at 136-40.) After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding her level of pain was not fully credible.

I further suggest that the ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed Plaintiff's individual impairments in harmony with the relevant objective record medical evidence. (Tr. at 33-35.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

For all these reasons, and after review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*,

454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                            s/ **Charles E Binder**
                                                        CHARLES E. BINDER
Dated: November 1, 2010                       United States Magistrate Judge

### **CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date:  November 1, 2010         By    s/Patricia T. Morris
                                                     Law Clerk to Magistrate Judge Binder